**Opinion filed November 14, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00141-CV

_____

## IN THE INTEREST OF B.J.E., A CHILD

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 48,724**

## M E M O R A N D U M  O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of B.J.E.'s mother, awarded sole managing conservatorship to the Department of Family and Protective Services, and awarded possessory conservatorship to B.J.E.'s father. The mother appeals and, in eight issues on appeal, challenges the legal and factual sufficiency of the evidence to support termination. We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine

if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

In this case, the trial court found that the mother had committed three of the acts listed in Section 161.001(1): those found in subsections (D), (E), and (O). The trial court's findings under the respective subsections were that the mother had placed or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being, that the mother had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, and that the mother had failed to comply with the necessary provisions of a court order.

The record shows that B.J.E. was removed from his parents' care when he was two months old; he was almost two years old at the time of the final hearing in this case, a trial de novo. The removal was based upon allegations of neglect, prostitution, and drug use by the mother. B.J.E.'s father acknowledged that the mother had a problem with cocaine and that the mother's rights to three other children had previously been terminated based upon allegations similar to those in this case. At the time of B.J.E.'s removal, his father was incarcerated. He had

been incarcerated when B.J.E. was born and remained incarcerated at the time of the final hearing in this case.

Anna Daws testified that she had been assigned to this case when she worked for the Department. She verified that the mother had signed a family service plan and that the mother understood she needed to complete all services and comply with any additional orders of the trial court. The mother's family service plan was admitted into evidence, and the trial court's order appears in the clerk's record. The undisputed evidence showed that the mother did not complete any of the services required by the plan and the trial court's order. Daws testified regarding several of the mother's failures to comply as ordered.

The mother failed to maintain contact with the Department or her attorney, and she did not appear for the final hearing before the associate judge or the trial de novo before the referring judge. The mother tested positive for cocaine at the beginning of the case, and she subsequently failed to show up for two hair follicle tests. The mother's visitation rights were suspended in May 2013 after she threatened to abscond with B.J.E. Thus, at the time of trial, the mother had not seen B.J.E. in almost a year. The mother also had a criminal history.

B.J.E. was placed in foster care when he was four months old, and he continued to live with the same foster parents at the time of trial. By all accounts, B.J.E. had developed a strong bond with his foster parents and was thriving in their care. The foster parents are eager to adopt B.J.E. They have an appropriate home and are financially stable. Daws believed that termination of both parents' rights would be in the best interest of B.J.E. Anita Davidson, the CASA volunteer and guardian ad litem for B.J.E., also believed that it would be in B.J.E.'s best interest for the trial court to terminate the parental rights of both parents and to allow B.J.E. to remain with his foster family. Davidson testified that B.J.E. had a wonderful relationship with his foster parents and was bonded with them. Although

the trial court did not free B.J.E. for adoption because it did not terminate the father's parental rights, the trial court appointed the Department as B.J.E.'s sole managing conservator. Nothing in the record indicated that the Department would remove B.J.E. from his foster family, "the only family that he's known for the majority of his life."

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the mother failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of B.J.E. The evidence showed that the mother was ordered to complete services but that the mother failed to complete her services or comply with the trial court's orders. Section 161.001(1)(O) does not "make a provision for excuses" for a parent's failure to comply with the family service plan. *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting *In re T.N.F.*, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied)). The evidence also showed that B.J.E. had been in the Department's care for at least nine months and that he had been removed from the mother due to abuse or neglect. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(O). *See id.* The mother's fifth and sixth issues on appeal are overruled.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the mother's first, second, third, or fourth issues in which she challenges the sufficiency of the evidence to support the trial court's findings under Section 161.001(1)(D) and (E). *See* TEX. R. APP. P. 47.1.

In the mother's seventh and eighth issues, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in B.J.E.'s best interest. With respect to the best interest of

4

a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of B.J.E. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the child's relationships with the mother and the placement family, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the mother and of the placement family, the stability of the current placement, the programs available to assist the family, the plans for the child by the Department, the mother's apparent continued drug use, the mother's behavior, and the mother's failure to complete her court-ordered services, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the mother's parental rights is in the best interest of B.J.E. *See id.* The trial court's finding as to best

interest is supported by clear and convincing evidence. Accordingly, we overrule the mother's seventh and eighth issues on appeal.

We affirm the trial court's order of termination.


JIM R. WRIGHT

CHIEF JUSTICE


November 14, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.